# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
| --- | --- |
| ROBERT V.,[1]<br><br>    *Plaintiff*,<br><br>    v.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY<br><br>    *Defendant.* | No. 3:21-cv-00377 (MPS) |

## RULING ON PENDING MOTIONS

In this social security benefits case, the Administrative Law Judge ("ALJ") found that

Plaintiff, Robert V., was not disabled under the Social Security Act ("SSA") from September 27,

2013, through December 31, 2014, and therefore denied benefits for this period. Plaintiff appeals

the Commissioner's denial of benefits[2]  and argues that (1) the ALJ's residual functional

capacity ("RFC") finding was not supported by substantial evidence in the record; (2) the ALJ's

RFC analysis failed to adequately evaluate the opinion evidence; (3) the ALJ's decision failed to

evaluate all alleged impairments; (4) the ALJ failed to determine that Plaintiff's persistent efforts

to obtain pain relief enhanced his credibility; (5) the ALJ's RFC finding failed to include all

supported limitations; (6) the ALJ erred by finding that Plaintiff's testimony was inconsistent

with the evidence in the record; and (7) the ALJ failed to give proper weight to the vocational

expert's ("VE") testimony. Because I find that the ALJ's decision was supported by substantial

---

[1] As set forth in Chief Judge Underhill's January 8, 2021 Standing Order, the Plaintiff is identified by his first name and last initial. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01, (D. Conn. Jan. 8, 2021).

[2] Plaintiff filed a motion for summary judgment, which I construe as a motion to reverse the Commissioner's decision.

evidence and free of the legal errors claimed by Plaintiff, I grant the Commissioner's motion to affirm the decision, ECF No. 27, and deny Plaintiff's motion to reverse, ECF No. 26.

## I.     FACTUAL BACKGROUND

I assume familiarity with Plaintiff's medical history, as summarized in his brief, ECF No. 26-1 at 6–15, which the Commissioner incorporates and supplements, ECF No. 27-2 at 1-3, and which I adopt and incorporate by reference. The Commissioner notes that Plaintiff's summary of his medical history incorporates evidence from outside the relevant period. *Id.* at 1. I also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[3] I cite only those portions of the record and the legal standards necessary to explain the ruling.

## II.    STANDARD OF REVIEW

The Court "may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence' - that is, if no reasonable factfinder could have reached the same conclusion as the ALJ." *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).

> The substantial evidence standard is a very deferential standard of review — even more so than the clearly erroneous standard . . . Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn . . . If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld . . . The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*

---

[3] Citations to the administrative record, ECF No. 21, appear as "R." followed by the page number appearing in the bottom right hand corner of the record.

*Id.* at 74 (internal quotation marks and citations omitted, emphasis in original); *see also*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted) ("Substantial evidence"

means "more than a mere scintilla").

### III.    DISCUSSION

As noted, Plaintiff raises the following seven issues regarding the Commissioner's denial

of benefits: (1) the ALJ's RFC finding was not supported by substantial evidence in the record;

(2) the ALJ's RFC analysis failed to adequately evaluate the opinion evidence; (3) the ALJ's

decision failed to evaluate all alleged impairments; (4) the ALJ failed to determine that

Plaintiff's persistent efforts to obtain pain relief enhanced his credibility; (5) the ALJ's RFC

finding failed to include all supported limitations; (6) the ALJ erred by finding that Plaintiff's

testimony was inconsistent with the evidence in the record; and (7) the ALJ failed to give proper

weight to the vocational expert's testimony. I address all issues below but not in the order raised

by Plaintiff. Instead, I address the arguments in the order of the five sequential steps used by the

ALJ: in the step two section, argument (3); in the step four section, arguments (1), (2), (4), (5),

and (6); in the step five section, argument (7).

### A.  Step Two: Medically Determinable Impairments

Plaintiff claims that the ALJ erred by failing to properly consider evidence of his

"obesity, hand tremors, and heart condition" in the analysis of his medically determinable

impairments. ECF No. 26-1 at 20. Specifically, he argues that the ALJ failed to consider the

"combined effects of obesity" with the other impairments, *id.*, and that the ALJ overlooked

evidence regarding his hand tremors and heart condition, *id.* at 20–23.

The ALJ found that Plaintiff had the following severe impairments, which "significantly

limit the ability to perform basic work activities": "Multilevel Degenerative Disc Disease; Left

Rotator Cuff Repair and Triceps Tears; Plantar Fasciitis; Elbow Tendonitis; and Chronic

Headaches." R. 600. The ALJ also found that Plaintiff had "been evaluated and treated for hand

tremors, ACL tear, obesity, depressive disorder and anxiety disorders," but concluded that the

"objective evidence in the medical record of [these] impairments" indicated that they were "non-

severe in that such impairments establish only a slight abnormality or a combination of slight

abnormalities that would have no more than a minimal effect on the claimant's ability to meet the

basic demands of work activity." *Id.* In reaching this conclusion, the ALJ examined the medical

evidence regarding Plaintiff's hand tremors, obesity, and depressive and anxiety disorders. *Id.*

600–02.

### 1. Obesity

Plaintiff's argument that the ALJ failed to consider the "combined effects of obesity"

with the other impairments fails because the ALJ explicitly stated that she considered the non-

severe impairments, including obesity, and concluded that they "establish only a slight

abnormality or a combination of slight abnormalities that would have no more than a minimal

effect on the claimant's ability to meet the basic demands of work activity." *Id.* 600. The ALJ

"will not make general assumptions about the severity or functional effects of obesity combined

with" other impairments but must instead evaluate "each case based on the information in the

case record." SSR 19-2P, 2019 WL 2374244, at *4 (S.S.A. May 20, 2019). The ALJ noted

Plaintiff's height and weight during the relevant period, but found that there was no evidence in

the record that Plaintiff's obesity impacted in any way his ability to do basic work activities.[4]

*See* R. 601 (ALJ noting that there was no evidence in the record that the obesity resulted in

"specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac

---

[4] Severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2022). If the ALJ finds that the claimant does not have a "severe impairment," then the claimant is not disabled. *Id.*

functioning"). Plaintiff does not point to any evidence in the record to the contrary. *See Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) ("It is well established that the burden of proving disability is on the claimant."). Nor did Plaintiff allege at his hearing that obesity was a factor affecting his work function or related to any other limitations. *See* R. 615-58 (no mention of obesity affecting function, just noting Plaintiff's weight fluctuates); *Harrington v. Saul*, 827 F. App'x 146, 148 (2d Cir. 2020) (summary order) (no error where ALJ did not mention obesity in opinion where claimant failed to mention obesity in her application or at her hearing). Indeed, Plaintiff's memorandum of law states that he was obese without discussing how his obesity affected his ability to work and whether it combined with any other impairments. ECF No. 26-1 at 20. Thus, it does not appear that the "combined effects of obesity with another impairment" would result in "greater . . . effects," ECF No. 26-1 at 20, as Plaintiff failed to prove that his obesity, either alone or in combination with other impairments, affected his physical or mental ability to do work during the relevant period.

### 2. Hand Tremors and Heart Condition

Plaintiff also argues that the ALJ overlooked evidence regarding his hand tremors and heart condition. The ALJ did examine evidence relevant to the hand tremors, such as Plaintiff's hearing testimony and medical evidence from the relevant period. R. 600 (citing R. 424, 428). Plaintiff cites evidence that he sought treatment for his hand tremors during 2013 and 2014. ECF No. 26-1 at 20–21. But that evidence supports the ALJ's conclusion that Plaintiff's hand tremors improved with treatment and that there were no significant deficits. R. 600; *see* R. 424 (stating that Plaintiff's hand tremors and headaches improved by 50% with treatment); R. 431 (same). Plaintiff also points to evidence outside of the relevant period,[5] indicating that he continued to

---

[5] To qualify for disability insurance benefits, Plaintiff must be insured for benefits at the time of disability. *See* 42 U.S.C. § 423(a), (c) (2018); 20 C.F.R. §§ 404.101, 404.131 (2022). The last date a person is eligible for disability

see physicians for his "essential tremor" in 2015, ECF No. 26-1 at 21 (citing R. 424; R. 427; R. 559), and was diagnosed in 2019 with "chronic migraine without aura, chronic post-traumatic headache, left-sided *Bell's palsy*, and status migrainosus," *id.* (emphasis in original) (citing R. 871). An ALJ is ordinarily not required to consider evidence outside of the relevant period unless the evidence relates to the claimant's condition during the relevant period. *See McManus v. Comm'r of Soc. Sec.*, 298 Fed. App'x 60, 61 (2d Cir. 2008) (summary order) ("no error in the ALJ's decision to exclude additional evidence proffered by" the plaintiff where the "evidence pre-dated the time period the ALJ was required to consider under 20 C.F.R. § 404.1512(d)"); *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (evidence regarding a claimant's condition after date last insured can be considered if claimant can demonstrate evidence relates to the claimant's condition during the relevant period); *Jackson v. Kijakazi*, No. 20-CV-7476 (JLC), 2022 WL 620046, at *20 n.23 (S.D.N.Y. Mar. 3, 2022) (citation omitted) ("[A]n ALJ is 'ordinarily' not required to consider evidence outside of the relevant time period"). Here, there is no indication that the evidence from outside of the relevant period reflects Plaintiff's condition during the relevant period.

As for his heart condition, Plaintiff cites evidence that he underwent a "cardiac cathe[te]rization" on June 1, 2016, ECF No. 26-1 at 21 (citing R. 462), and received additional treatment for his heart in 2016, *id.* (citing R. 456; R. 459). Almost all the evidence Plaintiff cites

---

benefits is commonly referred to as the date last insured, and the period from the alleged onset of disability to the date last insured is known as the relevant period. A claimant must prove that he or she was disabled during the relevant period to receive any benefits. *Swainbank v. Astrue*, 356 F. App'x 545, 547 (2d Cir. 2009) (citation omitted) ("To be eligible for disability benefits, the claimant must demonstrate that she was disabled on the date she was last insured for benefits."). Here, Plaintiff alleges disability since September 27, 2013, and neither party disputes the ALJ's finding that Plaintiff remained eligible for disability insurance until December 31, 2014. R. 597 (ALJ noting dates of alleged disability onset and date last insured); ECF No. 27-1 at 2 (Defendant accepting ALJ's dates without comment); *see* ECF No. 26-1 at 5 (Plaintiff accepting ALJ's disability onset date and failing to challenge ALJ's date last insured determination). Thus, the relevant period here is September 27, 2013, through December 31, 2014, and Plaintiff must cite evidence showing he was disabled before December 31, 2014.

is outside of the relevant period. *See* ECF No. 26-1 at 21-22. Again, as stated above, the ALJ is

not generally obligated to review medical evidence outside of the relevant period. Further,

Plaintiff points to no evidence in the record that he suffered a heart condition during the relevant

period or that this evidence from 2015 to 2019 regarding his heart condition reflects his

condition during the relevant period.

### B. Step Four: The RFC Finding

Plaintiff argues that the RFC finding was not supported by substantial evidence in the

record because the ALJ "did not consider the objective medical evidence," ECF No. 26-1 at 16,

failed to "adequately consider the medical opinion of Dr. Xiong," *id.* at 19, and did not

sufficiently credit Plaintiff's testimony "during his hearing," *id.* at 24.[6] I disagree.

#### 1. Objective Medical Evidence

Plaintiff's first challenge to the RFC is that it was not "based on the overall objective

medical evidence." ECF No. 26-1 at 17. In support of this claim, Plaintiff provides a litany of

diagnoses, procedures, and other medical evidence that he seems to suggest the ALJ ignored.[7]

Substantial evidence, however, supports the ALJ's RFC determination.

---

[6] Plaintiff also argues that the ALJ failed to "provide a narrative discussion with cites to evidence in the record for how the restrictions were derived." ECF No. 26-1 at 17. This argument ignores the text of the ALJ's opinion. The ALJ explained the reasons for the RFC finding, cited evidence, described the symptoms and diagnoses that the objective medical evidence supported, and evaluated the opinion evidence. *See* R. 602–05. Thus, the ALJ has satisfied her obligation to provide an explanation of the RFC finding.

[7] Plaintiff presents much of this medical evidence without context or explanation as to how it functionally impacts him. *See, e.g.,* ECF No. 26-1 at 17 (noting that a "MRI of the lumbar spine indicated a small hemangioma in the L3 vertebral body. Disc degeneration and/or desiccation at L3-4 and L4-5 with slight disc space narrowing at L3-L4. At L5-S1, there is bilateral facet joint arthropathy. At L4-5, there is disc bulging with a small superimposed left foraminal spondylotic disc protrusion that abuts the left L4 nerve root sleeve. At L3-4, there is spondylosis and disc bulging" without explaining how this functionally impacts Plaintiff). And Plaintiff also cites several records that are dated after the relevant period for Plaintiff's disability determination. *See* ECF No. 26-1 at 17-18 (citing R. 474-75 (2015), R. 479-82 (2015), R. 483-85 (2015), R. 863 (2019)). As discussed above, without a showing that it reflected his condition during the relevant period, this post-2014 evidence is less probative to Plaintiff's RFC than evidence from within the relevant period.

Plaintiff's RFC is "the most [he] can still do despite [his] limitations" and is determined "based on all the relevant evidence in [the] case record," namely, "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(1), (3) (2022). "[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citation and internal quotation marks omitted). "An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of an ALJ's decision[.]'" *Id.* at 178 n.3 (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). I "must affirm an ALJ's RFC determination when it is supported by substantial evidence in the record." *Barry v. Colvin*, 606 Fed. App'x 621, 622 n.1 (2d Cir. 2015) (summary order) (citations omitted).

Based on the entire record, including the objective medical evidence and opinion evidence, the ALJ found that during the relevant period,

> [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he could perform occasional stooping, crouching, crawling, and kneeling with occasional ability to climb ramps and stairs but he was unable to climb ladders, ropes or scaffolds. He required a sit/stand option. He could perform frequent reaching and handling. The work should have not involved pace dependent or belt work, but he was able to self-pace and he required a low stress job with occasional decision-making and occasional changes in work setting.

R. 602. The ALJ stated that the finding for sedentary work with a sit/stand option reflected that Plaintiff "had some limitations" during the relevant period because of his alleged impairments.[8] R. 603. The ALJ also noted that Plaintiff "had postural and manipulative limitations," *id.*, but could "perform frequent reaching and handling," R. 602. The ALJ weighed Plaintiff's testimony

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a) (2022).

about medication side effects and pain complaints, incorporating into the RFC that Plaintiff could only work a "low stress job" that was not "pace dependent." R. 603.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's hearing testimony about his pain, functional limitations, and daily activities. R. 603-04. She partially credited this testimony, introducing the limitations in the RFC discussed above in response to it. But the ALJ also examined the medical evidence in the record, relying primarily on a series of medical examinations and supporting laboratory evidence from the relevant period. For example, the ALJ analyzed an examination by a physician in 2014 of Plaintiff's left shoulder and left wrist. R. 604. This examination found that Plaintiff's left shoulder had some "tenderness to palpation" but had "excellent movement," "rotator cuff muscles [that] are intact," and "no evidence of any impingement." R. 341. Similarly, Plaintiff's left wrist had some "tenderness to palpation" but "no swelling," and it had a "full range of motion" and "full mobility." R. 341-42. X-ray evidence supporting this examination found that Plaintiff's left wrist and shoulder were normal, without "fracture, dislocation, or any lesion." R. 343.

The ALJ also considered examinations and x-rays of Plaintiff's left ankle that found some medical issues after a fracture, *see* R. 604 (citing, for example, R. 344-47), which were incorporated in the RFC sedentary work finding but found to be not disabling, R. 602. *See also* R. 1248 (weight bearing views of left ankle and foot taken in July 2013, one month after Plaintiff fractured his ankle in June 2013, showed normal foot alignment and no acute abnormality). And the ALJ reviewed multiple medical examinations from the relevant period, including supporting MRI and EMG results, in evaluating Plaintiff's "degenerative disc disease." R. 604 (citing several treatment records and laboratory results, such as R. 334-35). The ALJ also considered evidence from outside of the relevant period, including examinations from 2015 and 2016. R.

604-05 (citing, for example, R. 477-82). One report included "the first mention of problems with prolonged sitting," R. 605, where a physician noted that "[p]rolonged sitting and walking may aggravate [Plaintiff's] low back pain," R. 479. The ALJ accounted for this evidence in the RFC by finding that Plaintiff was capable of sedentary work with a sit/stand option.

Ultimately, however, the ALJ noted that "none of the medical records detail any significant loss of strength" such that Plaintiff could not lift or carry to the extent of the RFC. R. 605. Several physical examinations noted that Plaintiff's musculoskeletal system was "largely normal," with pain complications that were maintained with "pain medications and only conservative treatment of injection therapy." R. 605; *see, e.g.,* R. 341-42, R. 344-45, R. 360, R. 365, R. 572. The ALJ also noted that a medical examination of Plaintiff in May 2014 found him "feeling well, energ[etic] . . . much better overall." R. 572. The ALJ considered evidence relevant to Plaintiff's pain complaints; mental symptoms; shoulder, wrist, and ankle problems; back function; and disc degeneration.[9] From this analysis, the ALJ found that Plaintiff could, at most, perform in a low stress, self-paced environment, doing sedentary work subject to significant movement, postural, and manipulative restrictions. Contrary to Plaintiff's contention, the ALJ did consider objective medical evidence in making her RFC finding. As the RFC finding is supported by substantial evidence, I cannot remand on Plaintiff's step four argument.

### 2. Opinion Evidence

Plaintiff also challenges the ALJ's evaluation of the medical opinion of Dr. Xiong on two grounds. First, he argues that the ALJ did not adequately evaluate Dr. Xiong's opinion against

---

[9] The ALJ also explicitly considered in her opinion some of the evidence that Plaintiff now argues should have resulted in a disability finding, such as an MRI of Plaintiff's spine. *See* ECF No. 26-1 at 17 (Plaintiff listing MRI as something the ALJ should have considered or assigned more weight); R. 604 (ALJ considering the "MRI from October 2013" that "showed evidence of lordosis and disc degeneration"). Plaintiff's argument that the ALJ "did not consider the objective medical evidence," ECF No. 26-1 at 16, thus ignores that the ALJ cited some of the objective evidence Plaintiff claims was neglected.

the factors used to evaluate opinion evidence. ECF No. 26-1 at 19. Second, he claims that the limitations in Dr. Xiong's report should have been included in the RFC. *Id.* at 23.

Dr. Xiong's opinion is a one-page "Return to Work Medical Release Form" from August 16, 2019, that authorized Plaintiff to return to work with certain restrictions. R. 863. The opinion diagnosed Plaintiff with neck, lumbar, shoulder, and knee pain, limiting him to lifting no more "than 5 pounds." *Id.* Dr. Xiong also restricted Plaintiff's use of equipment and machinery and separately noted (by marks in yes or no sections) that Plaintiff was "affected by" standing, climbing, bending, crouching, walking, stooping, kneeling, and crawling. *Id.* He found no "other work-related activities which are affected by the patient's current physical condition" and ultimately authorized Plaintiff to return to work. *Id.*

The ALJ adequately evaluated Dr. Xiong's report against the factors she was required to consider. An ALJ must consider "every medical opinion" in the record, regardless of its source. 20 C.F.R. 404.1527(c) (2022). But not all opinions are assigned the same weight. Opinions from a treating physician are, for example, given controlling weight in claims filed before March 27, 2017, if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2) (2022). Plaintiff does not allege that the opinion from Dr. Xiong is from a treating physician or entitled to controlling weight. *See* ECF No. 26-1 at 19.

To decide how much weight to give opinions like Dr. Xiong's in claims filed before March 26, 2017, the ALJ had to explicitly consider "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537

11

F.3d 117, 129 (2d Cir. 2008)). An ALJ's failure to explicitly apply these *Burgess* factors is procedural error that warrants remand unless the ALJ has otherwise provided good reasons for the weight assigned to the opinion. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) ("An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight at step two is a procedural error . . . If 'the Commissioner has not [otherwise] provided "good reasons" [for its weight assignment],' we are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth [its] reasons'" (alteration in original)). But the ALJ must be affirmed when "a searching review of the record" confirms that the "substance of the treating physician rule was not traversed." *Id.* (citation omitted). "In other words, if the record otherwise provides good reasons for assigning little weight to the treating physician's opinion, the ALJ's decision should be affirmed." *Trevor H. v. Kijakazi*, No. 3:20-CV-1540 (KAD), 2022 WL 1211651, at *7 (D. Conn. Apr. 25, 2022) (citation and internal quotation marks omitted). In addition, a failure to apply the *Burgess* factors does not warrant remand if the error was harmless. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Remand is unnecessary, however, [w]here application of the correct legal standard could lead to only one conclusion.") (citation and internal quotation marks omitted, alteration in original); *see also Young v. Kijakazi*, No. 20-cv-03604 (SDA), 2021 WL 4148733, at *11 (S.D.N.Y. Sept. 13, 2021) (ruling ALJ's failure to "acknowledge, let alone assess," a medical opinion constituted harmless error because there was "no reasonable likelihood" the result would have been different).

Here, the ALJ explicitly considered *Burgess* factors (2) and (3). On (2), she noted that Dr. Xiong's one-page opinion is "somewhat vague" and provides "no explanation for [its] assessed limitations," including any reference to medical evidence that might support the opinion. R. 605;

*see* R. 863. On (3), she observed that Dr. Xiong's report is "not consistent with the overall treatment record and the objective evidence," including evidence "showing minimal treatment and objective findings during the relevant period." R. 606 (citing, for example, R. 341-47 (several physical examinations finding excellent movement in left shoulder, no swelling and full range of motion in left wrist), R. 351 (examination finding Plaintiff's "motor strength is 5/5" and that he is "comfortable at rest"), R. 361 (left ankle alignment is "normal" with joints "within normal limits"), R. 362 ("no ankle joint pain . . . no other hindfoot, midfoot, or forefoot pain"), R. 365 (Plaintiff is "sitting comfortably" and "in no apparent distress" with "bilateral upper extremities" that have "full range of motion, no tenderness to palpation and normal sensory and motor function")).

Though the ALJ did not explicitly consider factors (1) and (4), she also observed that Dr. Xiong's 2019 report, which appears to be based on an August 16, 2019, examination of Plaintiff, does not state that it concerned the 2013-2014 period relevant to Plaintiff's disability determination. R. 605-06; *see* R. 863. Indeed, Dr. Xiong's opinion has a section to discuss "any other work-related activities which are affected by the patient's *current* physical condition," suggesting that the opinion does not pertain to Plaintiff's condition during the relevant period. R. 863 (emphasis added). The ALJ thus provided good reasons, supported by record evidence, for assigning "less weight" to Dr. Xiong's opinion than to other record evidence. R. 605. And these reasons also justify not including the 5-pound lifting limitation from Dr. Xiong's report in the RFC. The ALJ need not provide a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citation omitted) (referring to *Burgess* factors). Because the ALJ's decision did not traverse the substance of the treating physician rule, remand is not warranted.

13

In any event, even if the ALJ erred in failing to include the 5-pound lifting limitation

from Dr. Xiong's report, any such error was harmless because the VE testified that someone with

Plaintiff's RFC could perform the three jobs she identified even with a 5-pound lifting limitation.

R. 647. An error is harmless if it does not affect the outcome of the ALJ's decision. Even had the

ALJ incorporated Dr. Xiong's 5-pound lifting limitation in the RFC at step four, the VE would

still have identified work in the national economy Plaintiff could perform, so the Commissioner

would have met her burden at step five. And the 5-pound lifting limitation is the only identifiable

limitation in Dr. Xiong's opinion, which otherwise only notes (by marks in yes or no sections)

that Plaintiff is "affected by" standing, climbing, bending, crouching, walking, stooping,

kneeling, and crawling. R. 863. These comments are too vague to be converted into an RFC

limitation, though the ALJ separately recognized that Plaintiff had functional problems in these

areas by limiting Plaintiff to occasional movement in several of these categories, sedentary work,

and a sit-stand option. R. 602. Even if the ALJ erred in failing to include the 5-pound lifting

limitation, then, any such error was harmless.

### 3. Plaintiff's Credibility

Plaintiff argues that the ALJ did not adequately weigh hearing testimony about his

functional limitations when determining his RFC, either by failing to account for it, improperly

attributing less weight to it than to other evidence, or incorrectly finding that it was inconsistent

with the medical evidence. ECF No. 26-1 at 24-25. During the hearing, Plaintiff testified that he

struggled to "hold things" because of hand tremors; these tremors made it difficult for him to

write, to use the restroom, and to eat with cutlery. R. 634. He also claimed that he "can't really

lift stuff" because of problems with his elbows. R. 635. Plaintiff argues now that this testimony

should have been fully credited by the ALJ and — because his testified-to limitations likely

preclude work — remand is warranted. The ALJ, however, did consider this testimony. She accepted that Plaintiff "had postural and manipulative limitations," R. 603, and wrote in her opinion about how Plaintiff testified "that he was unable to lift anything more than 5 pounds" and claimed at the hearing to have "very limited work capacity due to multiple pain complaints in his upper extremities, neck, left shoulder, left arm, right knee, low back, ACL, elbows and left ankle." R. 604. To the extent Plaintiff claims that the ALJ did not consider his testimony, this argument is plainly contradicted by the ALJ's opinion.[10] *See* R. 602-05.

The ALJ ultimately did not "credit the extent of [Plaintiff's] allegations based up the evidence of record during the relevant period." R. 604. In reaching this conclusion, the ALJ exhaustively reviewed Plaintiff's medical evidence. *See* R. 604-06. For example, she considered medical evidence from 2014 that showed "full range of motion…full mobility" and "no swelling" in Plaintiff's left wrist, R. 353-54, and "excellent movement" with "no evidence of impingement" in Plaintiff's left shoulder, R. 353. She also considered medical evidence showing that Plaintiff responded well to treatment and, in May 2014 was "feeling well, energ[etic] . . . much better overall." R. 572. And the ALJ could not find any medical evidence that detailed "significant loss of strength" such that Plaintiff could not perform to the extent of the RFC during the relevant period; Plaintiff's musculoskeletal examinations "were largely normal." R. 605; *see, e.g.,* R. 341-47 (largely normal physical examinations from October 2013, November 2013, and January 2014); R. 351 (May 2014 examination); R. 360-61 (August 2013 examination); R. 362-63 (July 2013 examination); R. 364-65 (June 2013 examination). The

---

[10] Plaintiff also argues here that the ALJ "does not identify any such evidence for the time period in question" when comparing Plaintiff's testimony about pain and symptoms to the objective medical evidence. ECF No. 26-1 at 24. This argument is defeated by reference to the opinion, where the ALJ compared Plaintiff's testimony directly to the medical evidence from the relevant period with citations. *See* R. 602-05.

ALJ's determination that Plaintiff's testimony about his functional limitations did not fully agree with the objective medical evidence is thus supported by substantial evidence.

Plaintiff also separately argues that the ALJ did not adequately credit his testimony about pain and other symptoms and that the credibility of this testimony was bolstered by evidence in the record about Plaintiff's efforts to obtain treatment for these problems. ECF No. 26-1 at 22-23. The "regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). Second, "the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (citation omitted). At step one, the ALJ did determine that Plaintiff's medically determinable impairments could reasonably produce the pain and other symptoms he alleged. R. 603. At step two, the ALJ wrote that Plaintiff testified to "multiple pain complaints," R. 604, and reviewed the objective medical evidence related to these complaints, R. 604-05. Based on this evidence, she partially credited Plaintiff's testimony. *Id.* The RFC analysis accounted for Plaintiff's pain complaints and related evidence, noting that they were a factor in finding that Plaintiff's work capacity should exclude "pace dependent or belt work." R. 603.

The record evidence examined by the ALJ suggested that Plaintiff experienced some pain during the relevant period but that the pain did not affect his movements and responded well to treatment. *See* R. 604; *see also, e.g.,* R. 341-43 (Plaintiff's shoulder had normal range of motion, intact rotator cuff muscles, and no evidence of impingement); R. 351 (Plaintiff rested comfortably in exam room); R. 353 (full range of motion in wrist); R. 572 (Plaintiff reported

feeling well, energized, and much better). The ALJ ultimately found this record evidence did not support Plaintiff's testimony about the degree to which his pain and other symptoms limited his functional capacity. R. 604 (reviewing the medical evidence and noting that "[a]lthough [Plaintiff] alleges that he has been disabled due to pain in his neck, upper and lower extremities and low back, the medical evidence of record does not demonstrate that he had the significant limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensory loss, or reflex abnormalities associated with intense and disabling pain during the relevant period at issue"). Considering the "very deferential standard of review," I cannot find that the ALJ erred in concluding that the symptoms described by Plaintiff were not adequately supported by the relevant medical records. *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012).

"The Commissioner is not obligated to accept without question a claimant's testimony about her limitations and symptoms, but has discretion to evaluate the claimant's credibility in light of the evidence in the record." *Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (citations omitted). Plaintiff now asks me to reweigh his testimony at the hearing against the objective medical evidence, claiming that despite the ALJ's analysis of medical evidence she did not show that this evidence partially contradicted Plaintiff's testimony. *See* ECF No. 26-1 at 24-25. But the ALJ plainly showed that Plaintiff's testimony did not agree with the substantial medical evidence she cited. And Plaintiff's claim that his credibility was "bolster[ed]" by his "persistent efforts in seeking relief of pain and other symptoms" fails to recognize the limited role of this Court in this appeal. ECF No. 26-1 at 23. Reviewing courts must "defer to the Commissioner's resolution of conflicting evidence," especially when resolving this conflict involves credibility determinations that the ALJ, who watched Plaintiff's testimony, is better positioned to make than a reviewing court. *Cage v. Comm'r of Soc. Sec.*, 692

F.3d 118, 122 (2d Cir. 2012) (citation omitted). I cannot now reweigh the evidence or overturn the ALJ's reasonable resolution of conflicting evidence.

### C.  Step Five: Vocational Expert Testimony

Finally, Plaintiff challenges the ALJ's use of the VE's testimony. The VE identified three jobs that someone with Plaintiff's RFC could work based on a hypothetical RFC identical to the RFC the ALJ found Plaintiff possessed. R. 646-47. Plaintiff argues that because two different hypotheticals posed by the ALJ to the VE contain conditions that would preclude working in those jobs, the VE's testimony was misused. ECF No. 26-1 at 25-26. This argument is without merit. The ALJ did not rely on either of these hypotheticals in satisfying her step five burden, and so the conditions that appear in those hypotheticals are not relevant to the step five determination.

The ALJ may "rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion" and the testimony accurately reflects "the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citations and internal quotation marks omitted). "When the hypothetical posed to the vocational expert is based on a residual functional capacity finding that is supported by substantial evidence, the hypothetical is proper and the ALJ is entitled to rely on the vocational expert's testimony." *Snyder v. Colvin*, 667 F. App'x 319, 321 (2d Cir. 2016) (summary order) (citations omitted). As stated above, the ALJ's RFC finding is supported by substantial evidence. The ALJ's first hypothetical to the VE is substantially identical to this RFC. [11] *See* R. 602, 646-47. There is thus

---

[11] The first hypothetical differed from the RFC in one aspect: it did not contain the "sit/stand option" the ALJ included in the RFC. R. 602 (ALJ RFC); *see* R. 646-47 (first hypothetical). But the VE testified that the three jobs identified in response to the first hypothetical all "would allow for a sit/stand option, if needed." R. 647. The ALJ's

substantial evidence to support the assumptions in the hypothetical to which the VE responded, and the VE's testimony accurately reflected Plaintiff's limitations and capabilities because it was based on the RFC.

To the extent Plaintiff argues that the work-preclusive conditions in the other hypotheticals should have been incorporated into the RFC via the ALJ's first hypothetical, "the ALJ properly declined to include in h[er] hypothetical question symptoms and limitations that [s]he had reasonably rejected." *Priel v. Astrue*, 453 F. App'x 84, 87–88 (2d Cir. 2011) (summary order) (citation omitted). Because I "find no error in the ALJ's RFC assessment, [I] likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) (summary order) (citation omitted). The hypothetical relied on by the ALJ in this case thus satisfies the ALJ's step five burden, and Plaintiff's attempts to attack the ALJ's use of VE testimony by criticizing hypotheticals not relied on by the ALJ are misplaced.

## IV.    CONCLUSION

For these reasons, the Plaintiff's Motion to Reverse (ECF No. 26) is DENIED and the Commissioner's Motion to Affirm the Decision (ECF No. 27) is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

                                    /s/
                                    Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              September 28, 2022

---

examination of the VE thus identified three jobs in the national economy that someone with Plaintiff's RFC could perform.